**UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| (1)  RICHARD TACKETT, | ) |
| | ) |
|    Plaintiff, | ) |
| | ) |
| vs. | ) Case No.: 20-cv-113-RAW |
| | ) |
| (1) KENDALL MORGAN, and | ) Jury Trial Demanded |
| (2) LEFLORE COUNTY SHERIFF, | ) |
| In His Official Capacity, | ) Attorney's Lien Claimed |
| | ) |
|    Defendants. | ) |

## COMPLAINT

**COMES NOW**, the Plaintiff, Richard Tackett, and for his Complaint against the above-named Defendants, states and alleges as follows:

### PARTIES

1. Plaintiff Richard Tackett is an individual and a citizen of the State of Oklahoma.

2. Defendant Kendall Morgan ("Undersheriff Morgan") or ("Morgan") is a resident of LeFlore County, State of Oklahoma. Morgan was, at all times relevant hereto, acting under color of state law, and in the scope of his employment, as an appointed official, employee and/or agent of the LeFlore County Sheriff's Office ("LCSO").

3. Defendant LeFlore County Sheriff is sued purely in his official capacity. It is well-established, as a matter of Tenth Circuit authority, that a § 1983 claim against a county sheriff in his official capacity "is the same as bringing a suit against the county." *Martinez v. Beggs*, 563 F.3d 1082, 1091 (10th Cir. 2009). *See also Porro v. Barnes*, 624 F.3d 1322, 1328 (10th Cir. 2010); *Bame v. Iron Cnty.*, 566 F. App'x 731, 737 (10th Cir. 2014). Thus, in suing the LeFlore County Sheriff in his official capacity, Plaintiff has brought suit against the County/LCSO.

1

## JURISDICTION AND VENUE

4. The jurisdiction of this Court is invoked pursuant to 28 U.S.C § 1343 to secure protection of and to redress deprivations of rights secured by the Fourth and Fourteenth Amendments to the United States Constitution as enforced by 42 U.S.C. § 1983, which provides for the protection of all persons in their civil rights and the redress of deprivation of rights under the color of law.

5. This Court also has original jurisdiction under 28 U.S.C. § 1331 to resolve a controversy arising under the Constitution and laws of the United States, particularly the Fourth Amendment and the Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983.

6. The acts complained of herein occurred in LeFlore County, Oklahoma. Jurisdiction and venue are thus proper under 28 U.S.C. §§ 116(a) and 1391(b).

## FACTUAL BACKGROUND

■ **Facts Specific to Plaintiff**

7. On or about April 23, 2018, Plaintiff was at his residence west of Spiro, Oklahoma, when a friend told him that he had found a woman's wallet. Plaintiff and his friend decided that they should try and return the wallet to the rightful owner. Plaintiff contacted the woman, via Facebook, who was the apparent owner of the lost wallet. Plaintiff communicated to the woman that her wallet had been found, but that there was no money in it.

8. As it turns out, the woman who had lost her wallet was the wife of a Panama (Oklahoma) police officer named Trent Bell.

9. A few hours after contacting the woman via Facebook, several law enforcement officers showed up at Plaintiff's home. Officers from the LeFlore County Sheriff's Office ("LCSO"), Spiro Police Department and Panama Police Department were all present.

10. Undersheriff Kendall Morgan was one of the officers present. Morgan and the other officers began interrogating the residents about the missing money. Morgan quickly became aggressive and began screaming at Plaintiff, "Where's the fucking money?!?!" Plaintiff insisted that there was no money in the wallet when it was found. Morgan continued screaming at Plaintiff and the other residents. Plaintiff was then handcuffed.

11. It was around this time that Spiro police officer Theo Capes arrived on the scene. When Officer Capes showed up, Plaintiff was handcuffed behind his back. Officer Capes escorted the handcuffed Plaintiff to the backseat of his patrol car.

12. Morgan continued to interrogate the other residents and yelling, "Who stole the money?!?!"

13. Morgan next went to Capes' patrol vehicle and opened the back door, where Tackett was sitting, handcuffed behind his back. Undersheriff Morgan then, without warning or justification, grabbed Plaintiff by the throat and started violently choking him. While choking Plaintiff, Morgan screamed, "Tell me where the fucking money is!!!" Plaintiff's airway was cut off, from being choked, and he lost consciousness for a period of time.

14. When Plaintiff regained consciousness, he was understandably upset. Plaintiff again told Undersheriff Morgan, in no uncertain terms, that he did not take any money from the wallet, and saw no money in the wallet.

15. Morgan asked Plaintiff for consent to search his house. Plaintiff refused. This enraged Morgan and he began choking Plaintiff a second time. Plaintiff again briefly lost consciousness. Officer Capes could hear a loud gargling sound coming from the back of his car,

3

as if someone was being choked. While Morgan was in the act of choking Plaintiff, Officer Capes began walking back to the car. Only then did Morgan release his hands from around Plaintiff's neck. When Officer Capes looked in the car, Morgan was in the backseat with Plaintiff. Officer Capes asked Morgan and Plaintiff if everything was okay. Morgan then walked away.

16. When Capes sat down in the front seat of the squad car, Plaintiff told Officer Capes that Undersheriff Morgan had been choking him. Injured and gravely frightened, Plaintiff pleaded with Officer Capes not to leave him alone with Morgan again. Officer Capes stayed in the car to protect Plaintiff from Morgan.

17. After the incident, Officer Capes reported Undersheriff Morgan's conduct to Spiro Police Chief Michael Draper. Officer Capes and Chief Draper agreed that Spiro Police should be very careful when on a call with Undersheriff Morgan. Officer Capes and Chief Draper were both concerned that Undersheriff Morgan's violent conduct would create legal problems for the Sheriff's Office.

18. At no time during the incident of April 23, 2018, did Plaintiff resist, attempt to flee or pose any threat to Morgan, or anyone else.

19. Morgan's assaults of Plaintiff were unlawful and without cause, and Plaintiff suffered injuries due to the Morgan's unconstitutional use of violent force.

20. At the time of the assaults, Plaintiff: 1) had committed no crime (and was suspected, without reasonable suspicion, of committing a non-violent misdemeanor); 2) was unarmed; 3) was handcuffed, physically subdued and helpless; 4) was not fleeing custody; 5) was not resisting; and 6) was not posing a threat to himself, Morgan or anyone else.

21. The violent force used by Morgan was excessive and objectively unreasonable.

22. Due to Morgan's unlawful and unwarranted use of force, Plaintiff suffered physical injuries to his neck, physical pain, unconsciousness and extensive emotional and mental pain and anguish.

23. At the time of the assault, Morgan was acting under the color of state law and within the scope of his employment with the LeFlore County Sheriff's Office.

24. Plaintiff was assaulted by Morgan in violation of his constitutionally protected rights.

- **A County Policy or Custom**

25. There is an affirmative link between the aforementioned excessive force utilized by Morgan and policies, practices and/or customs which the LeFlore County Sheriff promulgated, created, implemented and/or possessed responsibility for.

26. By the time that violent and excessive force was used on Plaintiff, as alleged herein, there was an established, widespread and unabated pattern and custom of excessive use of force by LCSO personnel generally, and Morgan, in particular.

27. Following is a summary of other instances of excessive use of force by Morgan.

28. On June 27, 2015, in LeFlore County, Undersheriff Morgan struck citizen Chad Osterhout in the face with a flashlight, causing significant injury to Mr. Osterhout. At the time that Morgan hit Osterhout, he was unarmed, was not fleeing or resisting and had his hands up in the air. Morgan then forcibly kicked or kneed Mr. Osterhout in the ribs, more than once, when he was subdued, on the ground and in handcuffs. Osterhout subsequently brought suit against Morgan for excessive use of force. In October of 2019, a federal jury returned a verdict of $3 million in compensatory damages and $1 million in punitive damages in favor of Osterhout and against Morgan.

29. On or about April 11, 2016, citizen Andrew Pohl was being detained by law enforcement officers, including Morgan, at his residence in Spiro, Leflore County, Oklahoma. Pohl was on the front porch and was handcuffed behind his back. While Pohl was handcuffed and posing no threat, Morgan "head-butted" Pohl in the nose. It is believed that this unwarranted and objectively unreasonable "head-butt" broke Pohl's nose.

30. On or about January 27, 2017, citizen Doyle Potter was arrested at a residence located near Spiro, Leflore County, Oklahoma. Potter was handcuffed behind his back. After Potter was handcuffed, Morgan began interrogating Potter. Potter was voluntarily talking to Morgan and answering his questions. Similar to the incident involving Pohl, while Potter was handcuffed and defenseless, Morgan used his head to "head-butt" Potter in the face at least five (5) times. It is believed Potter's nose was broken and he was bleeding from his nose and mouth.

31. On or about July 26, 2017, citizen Joseph Woodard was arrested at a residence in Poteau, Leflore County, Oklahoma. Woodard was handcuffed behind his back. Undersheriff Morgan walked Woodward to a patrol vehicle and had Woodard sit in the back seat. While Woodard was handcuffed in the back seat of a patrol vehicle, Morgan hit Woodward in the face at least two times. The second blow broke Woodward's nose.

32. On or about December 27, 2017, citizen John Albert was arrested near Poteau, Leflore County, Oklahoma. Albert was handcuffed behind his back. While Albert was handcuffed, Undersheriff Morgan "head-butted" Albert in the face, breaking his nose.

33. On or about May 14, 2018, citizen Christopher Peterson was at a residence in Poteau, LeFlore County, Oklahoma. Law Enforcement Officers, including LCSO deputies, were placing Peterson under arrest for a non-violent misdemeanor. Peterson complied with commands and did not resist arrest or pose any threat. Nevertheless, Undersheriff Morgan hit Peterson numerous times in the head and face, causing Peterson serious injuries.

34. There is a clear and disturbing pattern of violent, excessive and objectively unreasonable use of force by the LeFlore County Undersheriff tantamount to a custom.

35. These prior instances of excessive force put the LeFlore County Sheriff/LCSO on notice that continued unconstitutional conduct was probable and that LCSO personnel, including Morgan, were inadequately trained and/ or supervised with respect to the use of force.

36. The LeFlore County Sheriff/LCSO knew, must have known or should have known that, due to the established custom of excessive force and obviously inadequate training and supervision, unconstitutional excessive use of force by LCSO personnel, including Morgan, was probable, but failed to take reasonable measure to alleviate the risk of harm.

## CAUSES OF ACTION

### EXCESSIVE USE OF FORCE
### (Fourth and/or Fourteenth Amendment; 42 U.S.C. § 1983)

■ **Individual Liability and Underlying Violation**

37. Paragraphs 1-36 are incorporated herein by reference.

38. At the time of the complained of events, Plaintiff, as a free person, had a clearly established constitutional right under the Fourth and/or Fourteenth Amendment to be secure in his person and free from objectively unreasonable seizure through excessive force to injure him and his bodily integrity.

39. Any reasonable officer knew or should have known of these rights at the time of the complained of conduct as they were clearly established at that time.

40. In the totality of the circumstances, at the time that the violent force as used by Defendant Morgan, Plaintiff: 1) had committed no crime (and was suspected, without reasonable suspicion, of committing a non-violent misdemeanor); 2) was unarmed; 3) was handcuffed,

physically subdued and helpless; 4) was not fleeing custody; 5) was not resisting; and 6) was not posing a threat to himself, Morgan or anyone else.

41. The use of violent force by Defendant Morgan under the circumstances described herein was excessive and objectively unreasonable.

42. Defendant Morgan applied objectively unreasonable and excessive physical force on Plaintiff, thereby causing him bodily injures and pain, as well as mental pain and anguish.

43. As a direct proximate result of Morgan's unlawful conduct, Mr. Tackett suffered actual physical injuries, mental and physical pain and suffering and other damages and losses as described herein entitling him to recover compensatory and special damages in amounts to be determined at trial.

- **Official Capacity / Municipal Liability (LeFlore County Sheriff)**

44. Paragraphs 1-43 are incorporated herein by reference.

45. The aforementioned acts of excessive force by Morgan against Plaintiff are causally connected with customs, practices, and policies which the LeFlore County Sheriff/LCSO/LeFlore County promulgated, created, implemented and/or possessed responsibility for.

46. Such policies, customs and/or practices are specifically set forth in paragraphs 25-36, *supra*.

47. The LeFlore County Sheriff/LCSO/LeFlore County, through its continued encouragement, ratification, approval and/or maintenance of the aforementioned policies, customs, and/or practices; in spite of their known and obvious inadequacies and dangers; has been deliberately indifferent to citizens', including Plaintiff's, health and safety.

48. As a direct and proximate result of the aforementioned customs, policies, and/or practices, Mr. Tackett suffered injuries and damages as alleged herein.

8

**PRAYER FOR RELIEF**

WHEREFORE, based on the foregoing, Plaintiff prays this Court grant him the relief sought, including but not limited to actual and compensatory damages in excess of Seventy-Five Thousand Dollars ($75,000.00), with interest accruing from the date of filing suit, the costs of bringing this action, a reasonable attorneys' fee, along with such other relief as is deemed just and equitable.

Respectfully submitted,

/s/Daniel E. Smolen
Daniel E. Smolen, OBA #19943
Robert M. Blakemore, OBA #18656
Bryon D. Helm, OBA #33003
SMOLEN & ROYTMAN
701Cincinnati Ave.
Tulsa, Oklahoma 74119
P: (918) 585-2667
F: (918) 585-2669

***Attorneys for Plaintiff***